Chancellor Desaussure.
The only question in this case is* whether the issue of a female slave, born alter the execution of the will, and before the death of testator, should go with the mother to the legatee of said slave, or sink into the residuum and be distributable. There is no expression in the will as ta the issue of this slave, nor any ground for inference. The circuit judge (Desaussure) decreed that the said issue should *125 (with the mother) to the legatee of the mother. His decision, is the subject of this appeal. It is a case of difficulty, and the judges of this court are divided in opinion. . The law-judges have been consulted, but recollect no similar case. Several lawyers unconnected with the cause, entertain different opinions. The majority of this court concur in the following decreet
The maxim of the civil law, '“Partus sequitur ventrera,’5 has been adopted into, the a. a. 1740, for the government of slaves. P. L. 163. That act provides that the issue of female slaves shall follow the condition of the mother, and shall be chattels personal to all intents and purposes. This principle settles their status, and fixes a rule oí property. A slave-mother makes the issue slaves of her owner, though the father be free, or though he belong to another master. As far then, as that statute applies in the present case, the issue of a female slave bequeathed, would go with the mother, to the legatee. An owner may dispose of a slave so as to prevent this consequence; but his intention must be clearly manifested. No case exactly in point has been decided in this state. Milledge and Lamar settled the point of the issue, as between tenant for life and persons in remainder. (4 Eq. Rep. 641.) The court were, in that case, unanimously of opinion that the issue went to the persons in remainder, to the exclusion of tenant for life or years. That case however, relates to issue born after testator’s death; this, to children born during his life,- though after the making of his will; in which issue are not named. It was insisted that, as the bequest is not perfected till the testator’s death, children born before that period formed no part of the legacy, do not pass under it, and must be distributable.
In the absence of any decided case, and if the a. a. he not conclusive, the court must resort to principles and analogies. In Ambler, 280, Lord Hardwicke says: the general rule as to wills is, that the time of the testament, not the testator’s death, is to be regarded; but that this rule admits of many distinctions and exceptions. One general exception is, where a legacy is of all my goods, because of the fluctuation of personal property; but a specific legacy is no exception, unless it be in its own *126 nature, subject to increase and diminution, asa legacy of a flock of sheep. In Ambler, 641, Lord Camden decided that after purchased pictures would pass under a bequest of all pictures, because personal estate fluctuates. Now, a bequest of slaves is manifestly comprehended in the distinction made by Lord H. as :o a specific legacy of a flock of sheep. Both are alike subject to increase and diminish, and of course fluctuate. In the case of. a bond bequeathed, if testator'has never received the interest, it passes-with the principal.- But it may be objected' that when testator takes a note for the interest that has accrued between the making of the will and bis death, it amounts to such a separation of the interest from principal as' will prevent the interest from passing. So, in ease of a- child bora, it is contended that there'is a separation from the mother, and the child does not pass any more than the' note taken for interest. But as this reasoning has no force in the case of flocks or herds bequeathed, where a similar separation of the increase takes place, it can have no. force here. There is an important difference between such increase of the issue of. slaves, younglings of a flock, &c. and the interest of a bond. When a testator takes a note for the interest due, he manifests by á positive act an intention that such interest shall not .pass as part of the bond. In fact, interest is no longer due. The note is a new principal which can be no longer recovered by suit on the bond.
There is a distinction with which lawyers are familiar, be-tweenreal and personal property, in many respects, particularly in cases of devise, which affects only such real property as testator possessed at the. making of his will; not subsequent acquisitions. ' But a general, bequest of personal property will carry all acquisitions, however made, between thé date of the legacy and the death of testator. This old law was altered by a statute that placed real and personal, property on the same footing as to devise; but the inconvenience was soon felt, and the act repealed.' It may be reasonably inferred from this, that our law inclines to give the increase of personal property bequeathed to the legatee. I have examined the civil law upon this point, and have received information from others,'among whom there *127 is some difference; but I think the weight of authority, reason and humanity, are in favor of my own former decision and present opinion, that the issue should go with their mother, to the legatee.
The general and broad expression of the civil law maxim, “Partus sequitur ventrera,” (so explicitly adopted by our a. a. 1740,) appears to■ apply (literally) to the case; and there is, nothing peculiar to take it out of the operation of the words. Another important maxim, both of civil and- common law, is that “accessorium sequityr principals, snun.,, The civil law seems clear, that the increment and accession to a specific legacy {“quovis modo auctum fuerit” as Yinnius says) belongs to the legatee. Thus, if a man devised lands, and afterwards built upon them, the buildings passed, though Of much greater value. Dig de Legal. 39, 44; Cooper’s just. 528. So, if a house was devised, after which expensive pillars or marble was added, they passed as accessories. Dig. 2,20, 19. Yinnius on the Inst. 2, 20, 17, (and see Cooper, 162) throws great light on the subject, and even extends the doctrine. lie says, “In this paragraph and the three following, we are taught what the law is, if the thing bequeathed be increased or diminished, during the testator’s lifer If there be a diminution, it does not annul the legacy, unless the part taken away was the principal, and the remainder merely aecessory;(a) and in case of diminution, the heir is not bound to deliver more than what remains. This is illustrated by four examples: 1st, legacy of a female •slave, with the offspring: 2d, ordinary slaves with those called vicarial: 3d, increase of flocks and herds: '4th, a slave,- with peculium. But, after diminution, the legatee can only take what remains, provided it be given as making part of the principal; not merely as accessary to the part lost or taken away; for, whenever the principal is destroyed, the accessary is destroyed with it. If there be any increase, the best opinion is that it goes to the legatee in the following cases: ’1st, In case of *128 legacy of a flock or herd: 2d, of a building to which marble or other columns are added: 3d, of the peculium of a slave. ‘‘But this head, Vinnius adds, is very comprehensive; (latepatet) for to this are referred fruit of land, interest of money, rents of land, the issue of female slaves, partus; the increase of flocks and .herds, fa;tvs; alluvial land, and others. 2 Domat, 162. The commentary of Vinnius is quite general, and goes beyond the text of the civil law.
There are other considerations of great weight which apply to the issue of slaves bequeathed, and show the propriety of permitting the children to go with the mother. Vinnius lays down the rule broadly, that if the legatee is liable to any loss, he is entitled to the chance of gain. Now the legatee of a female slave risks every consequence of breeding and childbirth, and should therefore be entitled to the issue. The original foundation of property was derived from labor bestowed on it, whereby its value was created or augmented. The issue of a female slave would often be valueless but for her exertions and sufferings, all of which are at the risk of her master or owner. Equality is equity. Those who incur the risk are reasonably entitled to the gain. This principle is familiar to jurists, and forms the foundation of several branches of legal learning. If it be said that inequality might thus be produced among the testator’s family, it is answered that chances are equal, and the testator may, at pleasure, alter his will, as circumstances require. In a question of property, there seems to be no distinction between the partus ancillarum and the feetus gregis, which latter, it is admitted, goes to the legatee; and I apprehend it is not questioned that a general bequest of all a man’s slaves, or those on a particular plantation, would carry the issue born after the making of the will, and before testator’s death. Why then should there be a difference in cases of specific bequést of one or more females.
There are indeed passages in the civil law which have been considered by some as furnishing a different rule from that we have relied on. (a) It is a conflict of authorities and *129 'yeasonings; bat I consider the weight of authorities favorable to this opinion, and if they were more equally balanced than they are, humanity would preponderate; for humanity is a principle familiar to all legislation, as well as to all judicial decisions depending on principle, and not on positive provisions of law. The following passage is a proof of this: A question arose whether, in a legacy of a farm stocked and furnished, the tradesmen (fullers, spinners, Sic.) should pass. The opinion was that they should. Then follows this addition: “ Uxores quo-que ct infantes eorum qu.i supra enumerad sunt, credent! urn est, in eadem villa agentes, voluisse testatorem legato contineri; ñeque enim durum separaiionem injunxissc credcndus est;” 3d Pothier ad Pandeet. 48. This French civilian, so praised by Sir Wm. Jones for learning anti wisdom, gives several rules for the interpretation of wills of doubtful expression, which apply here. He- says: “In re dubia, benigniorem sententiam sequi, non minus justum est quam tutius; semper in dubiis, benigniora preferenda sunt.” if then this case were more doubtful than it is, humanity obviously dictates that the children should follow their mothers; a contrary decision would separate even sucking infants; for in most cases of legacies, the children would be young. [For, if grown up, the testator would specify them. T. i?.J Such a separation would be revolting; we cannot therefore be called upon in a doubtful case, to decide in such a way. Sound policy, as well as humanity, requires that every thing should be done to reconcile these unhappy beings to their )ot, by keeping mothers and children together. By cherishing their domestic tics, you have an additional and powerful hold on their feelings and security for their good conduct. As a question of property, it is unimportant how the rule is settled, for it will operate alike on all. Since then, our statute, of 1740 established the general principle that the issue of female slaves shall follow the condition of the mother; that principle should govern every case where, as in the present, there is nothing to constitute a lawful or reasonable exception. The weight of the civil law is, as we have seen, in favor of an union of the mother and her qbildrep; agd Ml the analogies of the common law, coii- *130 arm the civil law. Finally, humanity and policy combine to .recommend'the principle upon which I decree, of “partus se • quitur ventrem.” I think therefore that the decree of the circuit court’ should be affirmed, and that the issue of the female slaves in question, should go with their mother.
Chancellors Waties, and Thompson, concurred.

 “Si quis ancillas cum suisnatis legaverit, etiamsi anciiice mortucefuerinf, partus legato cedunt ” Vinn. 2, 20, 17. and see 3 Poth. 115, (because they are a sort of principal,)

 Quere — Which are they? Aadhave they been justly interpreted? 3VB.